UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAULA D. W.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. C26-5014-BAT

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff appeals the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred by misevaluating (1) the medical evidence; (2) Plaintiff's testimony; (3) the lay testimony; and (4) Plaintiff's residual functional capacity (RFC), leading to an incorrect conclusion at step five of the sequential evaluation. Dkt. 16, at 2. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 52 years old, has a high school education, and has worked as a canvasser, cashier, and photographer. Tr. 78, 79, 92. In April 2022, she applied for benefits, alleging disability as of February 16, 2022, when, as the result of a car accident, she suffered a

concussion, a broken back, broken ribs, and consequent surgery. Tr. 82, 87. Her applications were denied initially and on reconsideration. Tr. 78–132.

In May 2025, the ALJ conducted a hearing and subsequently issued a decision. Tr. 18–42, 48–77. The ALJ determined Plaintiff met the insured status requirements of the Social Security Act through June 30, 2026, and had not engaged in substantial gainful activity since the alleged onset date. Tr. 23. The ALJ found Plaintiff has the following severe impairments: disorder of the spine, rib and spine fractures, greater trochanteric bursitis, minimal hip osteoarthritis, depressive disorder, anxiety disorder, substance addiction, neurocognitive disorder, attention-deficit hyperactivity disorder (ADHD), and traumatic brain injury. Tr. 24–25. The ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 25. The ALJ determined Plaintiff retains the RFC to perform light work with additional physical, postural, environmental, mental, and social limitations, including, among others: she can sit for six hours and stand or walk six hours in an eight-hour workday; she can understand, remember and carry out simple instructions; she can make simple work-related decisions; she can occasionally interact with coworkers, supervisors and the public in the performance of job duties. Tr. 26. The ALJ found Plaintiff has no past relevant work and at least a high school education. Tr. 31–32. At step five, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. 32. The ALJ therefore concluded Plaintiff has not been disabled through the date of the decision. Tr. 33. As the Appeals Council denied Plaintiff’s request for review, the ALJ’s decision is the Commissioner’s final decision. Tr. 5–10.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court finds Plaintiff has not demonstrated that the ALJ failed to support the decision with substantial evidence or committed harmful legal error when evaluating the medical evidence, Plaintiff's testimony, the lay testimony; and Plaintiff's RFC.

**1. Medical Evidence**

The ALJ considers the persuasiveness of medical opinions using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in the decision how persuasive he or she finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain how he or she considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). Nevertheless, an ALJ cannot reject a doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence. Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022).

Petitioner contends the ALJ harmfully misevaluated the medical opinions of Alysa A. Ruddell, Ph.D., Louis Enkema, M.D., Justin Stamschror, M.D., Ryan Hunter, M.D., Abebe Belete, N.P., as well as "other medical evidence" and prior administrative medical findings. She has not, however, demonstrated the ALJ's assessment of the medical evidence lacked the backing of substantial evidence or was the result of harmful legal error.

**a. Dr. Ruddell**

In September 2022, Dr. Ruddell conducted a telephonic psychological/psychiatric evaluation of Plaintiff. Tr. 1265–69. Dr. Ruddell opined Plaintiff had a marked limitation in basic work activities for six domains; a moderate limitation for six domains; and none or a mild limitation for one domain. Tr. 1267. She rated Plaintiff as having an overall severity rating of marked. *Id.* After administering a mental status exam, Dr. Ruddell assessed Plaintiff as being normal or adequate for attitude and behavior, affect, content of thought, fund of knowledge, and conversation; and with impairments in mood (anxious), social/attitude (obvious emotional distress/anxious), stream of mental activity and speech (pressured), orientation (time/day of the week), memory (remote, recent, and immediate), and concentration (serial 3's, proverbs). Tr. 1268. For prognosis/plan, Dr. Ruddell opined vocational training or services would minimize or eliminate barriers to employment. Tr. 1267.

The ALJ found Dr. Ruddell's opinion to be unpersuasive.[1] Tr. 31. The ALJ acknowledged that while Dr. Ruddell's opinion was supported by some objective analysis, the

[1] While the ALJ referred in plural to Dr. Ruddell's "opinions," Dr. Ruddell's September 13, 2022 evaluation appears to be formatted differently at different places in the record, Tr. 1265–69, 1565–69, 1571–75, and appears to have been analyzed alongside Holly Petaja, Ph.D.'s

opinion relied primarily upon Plaintiff's subjective statements that had been discounted and was inconsistent with the record as a whole. *Id.* The ALJ noted Dr. Ruddell's evaluation took place the same year as Plaintiff's car accident in 2022, while subsequent mental evaluations showed Plaintiff to be less limited and were more persuasive due to Plaintiff's wide range of daily activities, including living on her own, some meal preparation, some shopping in stores, self-care tasks like dressing, and household chores. *Id.* The ALJ thus questioned (1) the supportability of Dr. Ruddell's opinion given the unreliability of Plaintiff's subjective statements made during the same year as the car crash, and (2) the consistency of Dr. Ruddell's opinion given that later mental evaluations opined fewer limitations that were in-line with Plaintiff's daily activities.

First, as discussed below, the ALJ gave specific, clear and convincing reasons for discounting Plaintiff's symptom testimony. An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)) (superseded by statue on other grounds). That is what occurred here. Second, the ALJ reasonably cited later mental evaluations and daily activities that called into question Dr. Ruddell's assessment of marked mental limitations in six of thirteen domains. For example, Dr. Stamschror conducted an April 2023 mental evaluation and opined plaintiff could perform simple and repetitive tasks, could perform work duties at a sufficient pace, and could maintain regular attendance in the workplace and complete a normal workday without interruption based on a history of reliability in the

---

September 20, 2022 review of Dr. Ruddell's opinion that reached the same conclusions, Tr. 1603; *see* Tr. 31 (citing Tr. 1265–69, 1567, 1573, 1603). Plaintiff notes that Dr. Petaja reviewed Dr. Ruddell's opinion and came to the same conclusions. Dkt. 16, at 3. Like Plaintiff, the Court here presumes that the ALJ's reasons for discounting Dr. Ruddell's opinion apply with equal force to Dr. Petaja's opinion. *See id.*

workplace. Tr. 1380. Similarly, NP Belete conducted a June 2024 psychological evaluation and opined that Plaintiff has no limitations with understanding, remembering, or applying simple directions; has no limitations with understanding, remembering or applying complex directions; has no limitations with using reason and judgment to make work related decisions; and has mild to moderate limitations in all other domains. Tr. 1456. It was reasonable to have found Dr. Stamschror and NP Belete's opinions to be more persuasive than Dr. Ruddell's opinion, as well as to find those opinions to be more consistent with Plaintiff's ability to carry out the daily activities of independent living to which Dr. Ruddell referred, such as preparing sandwiches or leftovers, cooking occasionally, going grocery shopping, using the internet to search for jobs and resources, sweeping and mopping, doing laundry, and dressing and showering. Tr. 31 (citing Tr. 1560); *see* Tr. 1266.

Plaintiff has not demonstrated the ALJ's evaluation of Dr. Ruddell's opinion was unsupported by substantial evidence or the result of a harmful misapplication of the law.

**b. Dr. Enkema**

In April 2024, Dr. Enkema physically examined Plaintiff, reviewed the record, and concluded that Plaintiff did not have the ability to do work and work-related activities on a day-to-day basis in a regular work setting. Tr. 1374. Dr. Enkema opined Plaintiff could (1) stand or walk for half an hour at a time, and for a total of 4 hours during an 8-hour period; (2) could sit for 2 hours at a time, and for a total of 6 hours during an 8-hour period; (3) could occasionally lift/carry 20 pounds; (4) could push/pull 10 pounds occasionally with both arms and legs; (5) could occasionally climb, balance, stoop, kneel, crouch, crawl, reach overhead, or be exposed to chemicals, dust, noise or vibration; and (6) should never be exposed to working at heights, or with moving machinery, or with extreme temperatures. Tr. 1374–76. In contrast, however, Dr.

Enkema observed that Plaintiff's neuromuscular strength was 5/5 in all measures: strength, bilaterally in both arms and legs, and bilaterally in grip. Tr. 1370. Dr. Enkema also observed Plaintiff had normal gait and station; had no difficulty getting on and off the examination table; was able to perform without difficulty tandem walking, walking on heels, walking on toes, and finger to nose; had normal muscle tone; and had no sensory deficits. Tr. 1371. Dr. Enkema noted that Plaintiff's memory and concentration were diminished; she was slow of speech, had poor recent memory, poor concentration, and difficulty with simple instructions. Tr. 1370. Dr. Enkema appeared to contradict himself in the same paragraph by noting that Plaintiff had "normal speech and affect." *Id.*

The ALJ found Dr. Enkema's opinion to be unpersuasive. Tr. 30. Although agreeing with the limitation to light work, the ALJ disagreed with Dr. Enkema's limitation to four hours walking and standing as unsupported by the mostly unremarkable physical exam findings, as well as inconsistent with the record as a whole. *Id.* First, as to supportability, it was not unreasonable for the ALJ to have considered Dr. Enkema's conclusions about the severity of Plaintiff's limitations to be overstated given a benign physical examination that demonstrated, aside from limited range of motion in Plaintiff's back and straight leg raises, normal strength, sensation, and gait. Tr. 1370–71. Second, as to consistency, the ALJ disagreed with the interpretation of the medical evidence that Dr. Enkema must have relied upon to opine a limitation to four hours of walking and standing. Tr. 30. The ALJ found that objective examination findings for Plaintiff have been routinely unremarkable and reflected normal musculoskeletal and neurological functioning, including normal gait, motion, strength, and sensation. *Id.*; *see, e.g.*, Tr. 1323, 1472, 1648, 1722, 1770, 1907, 1940, 2027. Moreover, the ALJ referred to a wide range of daily activity to be inconsistent with Dr. Enkema's opined physical

limitations: preparing some meals, shopping in stores (with assistance with lifting), and taking walks down the block. Tr. 30 (citing hearing testimony); *see* Tr. 58–60). The ALJ's interpretation of the consistency and supportability of Dr. Enkema's opinion was a reasonable reconciliation of the medical record.

Plaintiff contends the ALJ should not have found Dr. Ekema's opined limitations to four hours of walking and standing to be inconsistent with the record because (1) Dr. Enkema's findings on back range of motion and straight leg raises supported his opinion, (2) the ALJ did not identify medical evidence that contradicted Dr. Enkema's opinion, and (3) none of Plaintiff's limited activities actually contradicted Dr. Enkema's opinion. Dkt. 16, at 5.[2] Although Plaintiff presents a plausible reading of the medical record, she has not demonstrated the ALJ's evaluation of Dr. Enkema's opinion was unreasonable. First, although the observation of Plaintiff's limited back range of motion and straight leg raises could support a four-hour standing/walking limitation, this evidence is also consistent with no such restriction, particularly when paired with other, benign physical determinations. Second, the ALJ accepted as persuasive the prior administrative findings of state agency medical consultants that found Dr. Enkema's limitations to be overstated and not consistent with objective medical evidence, imaging, or laboratory findings. Tr. 30; *see, e.g.*, Tr. 125–26, 140–41. Similarly, as the ALJ noted with respect to evaluating Plaintiff's symptom testimony, Plaintiff requested discharge from physical therapy in November 2022 when she reported no actual or suspected pain, having met long-term goals, and an inability to attend physical therapy due to having returned to work at a convenience

[2] Plaintiff has not challenged the ALJ's rejection of aspects other than Dr. Enkema's standing and walking restrictions. Dkt. 16, at 4–5. The Court therefore declines to address them other than to note that the ALJ either fully accepted the restrictions as part of the RFC assessment or, in the case of a limitation on sitting, clearly rejected the restriction on sitting while evaluating physical limitations in general.

store full-time with initial muscle soreness and fatigue. *See* Tr. 27 (citing Tr. 1943); Tr. 1943. Third, while none of Plaintiff's daily activities—preparing some meals, shopping in stores (with assistance with lifting), and taking walks down the block—are necessarily inconsistent with Dr. Enkema's limitation to four hours walking and standing, such activities are also reasonably consistent with the physical limitations set forth in the ALJ's RFC assessment (e.g., a restriction to 6 hours of standing/walking). *See* Tr. 26. What Plaintiff presents is an alternative interpretation of the evidence. Faced with more than one rational interpretation of the evidence, the Court must uphold the Commissioner's interpretation. *Thomas*, 278 F.3d at 954.

Plaintiff has not demonstrated the ALJ's evaluation of Dr. Enkema's opinion was unsupported by substantial evidence or the result of a harmful misapplication of the law.

**c. Dr. Stamschror**

In April 2023, Dr. Stamschror conducted a comprehensive psychiatric evaluation of Plaintiff. Tr. 1377–81. Dr. Stamschror opined Plaintiff's ability to perform simple and repetitive tasks was adequate, her ability to perform detailed and complex tasks was impaired, and her ability to perform work activities on a consistent basis without special or additional instructions was impaired, based on her performance on the cognitive exam. Tr. 1380. Dr. Stamschror opined Plaintiff's ability to perform work duties at a sufficient pace was adequate based on her ability to perform activities of daily living that she was physically capable of performing. *Id.* Dr. Stamschror opined Plaintiff's ability to maintain regular attendance in the workplace and to complete a normal workday without interruptions was adequate based on her history of reliability in the workplace. *Id.* Dr. Stamschror opined Plaintiff's ability to interact with coworkers and superiors and the public and adapt to the usual stresses encountered in the workplace was below average based on her interpersonal presentation. *Id.*

The ALJ found Dr. Stamschror's opinion to be largely persuasive in finding Plaintiff could perform simple tasks; however, the ALJ found unpersuasive Dr. Stamschror's opinion Plaintiff needed "special or additional instructions." Tr. 30. The ALJ found Dr. Stamschror's conclusion regarding special or additional instructions was supported by his own findings, such as circumstantial thought, distractibility, poor hygiene, and some deficits in memory and concentration. *Id.* Nonetheless, the ALJ found that conclusion inconsistent with the record as a whole: (1) objective findings throughout the record were routinely unremarkable and reflected normal mood, affect, appearance/hygiene, behavior, thought, overall cognition, memory, attention/concentration, insight, and judgment, Tr. 31 (citing Tr. 2033); (2) psychiatric assessments generally reflected normal mood, orientation, behavior, memory, and overall cognition, *id.* (citing Tr. 1323, 1472, 1746, 1770, 1907, 1918, 1940, 2027); and (3) Plaintiff was taking no psychiatric medications at the time of the evaluation by Dr. Stamschror, *id.* (citing Tr. 1378).

Plaintiff argues the ALJ cherrypicked the record to highlight only normal findings while ignoring abnormal findings that supported Dr. Stamschror. Dkt. 16, at 5. This is an unpersuasive characterization of record. Plaintiff neither cites nor describes any abnormal findings the ALJ failed to discuss. The ALJ indicated Plaintiff had demonstrated abnormal findings in concentration and memory during examinations by Drs. Ruddell, Enkema, and Stamschror. Tr. 29 (citing Tr. 1370, 1377–81, 1560–1568). The ALJ noted, however, that it was difficult to determine how Plaintiff's use of methamphetamine might have impacted her mental status at those examinations. *Id.* Plaintiff told Dr. Ruddell in September 2022 that she had last used methamphetamine in February 2022. Tr. 1572. Plaintiff denied using methamphetamine in her April 2023 examinations by Drs. Enkema and Stamschror. Tr. 1369, 1378. Yet in a February 24,

2023 emergency room visit, Plaintiff admitted to having smoked methamphetamine only two days earlier. Tr. 1321. Read as a whole, the ALJ's decision shows the ALJ gave greater weight to the many instances of generally unremarkable mental status examinations and less weight to the few times that abnormal findings were reported.

Plaintiff also argues, without citation to authority, that it was improper for the ALJ to have noted Plaintiff was not taking any psychiatric medication at the time of Dr. Stamschror's evaluation. Dkt. 16, at 5. Elsewhere in the decision, the ALJ noted Plaintiff showed intact attention, concentration, and insight/judgment—despite pressured speech, word-finding issues, and mildly impaired memory—in 2024 during a consultative psychological evaluation while she was taking psychotropic medications. Tr. 29 (citing Tr. 1450–57). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). It was not improper for the ALJ to discount Dr. Stamschror's opinion on the basis that Plaintiff appeared to show fewer mental limitations while taking medications.

Plaintiff has not demonstrated the ALJ's evaluation of Dr. Stamschror's opinion was unsupported by substantial evidence or the result of a harmful misapplication of the law.

**d. Dr. Hunter**

In June 2024, consultative examiner Dr. Hunter physically evaluated Plaintiff. Tr. 1458–62. Dr. Hunter opined Plaintiff could stand for 2 hours in an 8-hour workday due to paraspinal spasm and walk for 2 hours in an 8-hour workday due to altered gait. Tr. 1460.

The ALJ found Dr. Hunter's conclusion regarding the limitations to 2 hours walking and standing to be unpersuasive. Tr. 30. The ALJ found these limitations were supported by Dr. Hunter's examination findings, such as gait deficits, difficulty with physical maneuvers, such as

toe walk, inability for some maneuvers, and decreased lumber motion. *Id.* Nonetheless, the ALJ found Dr. Hunter's limitations on standing and walking to be inconsistent with the record: routinely unremarkable examination findings and Plaintiff's wide range of daily activities. *Id.* (citing Tr. Tr. 1323, 1472, 1648, 1722, 1770, 1861,1907, 1940, 2027). For example, examination notes from June 2022 reported laintiff was walking, had improved with physical therapy and would schedule more visits, and had some back pain while playing disc golf though she tried not to overdo it, Tr. 1648; examination notes from November 2022 referred to Plaintiff meeting her long term goals of returning to her former level of activity and working, Tr. 1943; examination notes from February 2023 observed that while positive for back pain and lumbar tenderness, Plaintiff walked without difficulty, had a normal range of motion, and was moving all extremities well, Tr. 1722; and examination notes from June 2024 observed that Plaintiff was well-developed with a normal range of motion, Tr. 1472. Elsewhere in the decision, the ALJ observed that by mid-2022, Plaintiff worked full-time 40 to 50 hours per week at a convenience store where her duties included mopping and sweeping the floors. Tr. 27 (citing Tr. 1953, 1955, 1957). Routinely unremarkable examination findings and Plaintiff's cited daily activities constitute substantial evidence supporting the ALJ's decision to discount Dr. Hunter's opinion. Plaintiff's arguments to the contrary offer an alternative evaluation of the evidence that does not undermine the ALJ's reasonable evaluation.

Plaintiff has not demonstrated the ALJ's evaluation of Dr. Hunter's opinion was unsupported by substantial evidence or the result of a harmful misapplication of the law.

**e. NP Belete**

In June 2024, Nurse Practitioner Psychiatric Belete examined Plaintiff and provided a psychiatric evaluation. Tr. 1450–57. NP Belete diagnosed Plaintiff with ADHD and generalized

anxiety disorder and found her prognosis to be good. Tr. 1456. NP Belete concluded Plaintiff has no limitations with understanding, remembering and applying both complex and simple directions and instructions; she has no limitations with using reason and judgment to make work-related decisions; she has mild to moderate limitations with interacting adequately with supervisors, coworkers and the public, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, regulating emotions, controlling behavior and maintaining well-being, maintaining personal hygiene and appropriate attire; she has no limitations with awareness of normal hazards and taking appropriate precautions. Tr. 1456.

The ALJ found NP Belete's opinion of mild to moderate limitations to be largely persuasive. Tr. 31. The ALJ noted, however, the assessment of mild to moderate limitations was vague and not expressed in functional language such that, to the extent the opinion suggested plaintiff was more limited than the RFC allowed, the conclusions were unpersuasive. *Id.*

Plaintiff does not describe how the ALJ harmfully erred by evaluating NP Belete's opinion, which notably found Plaintiff to be significantly less limited than is alleged. Dkt. 16, at 6–7. Plaintiff has not demonstrated the ALJ's evaluation of NP Belete's opinion was unsupported by substantial evidence or the result of a harmful misapplication of the law.

**f. Other Medical Evidence and Prior Administrative Medical Findings**

Plaintiff counsel contends that the ALJ harmfully erred with respect to "other medical evidence" and prior administrative findings without stating argumentation other than that the medical record could be construed to support her position. *See* Dkt. 16, at 7–10. Plaintiff's counsel has already been admonished on numerous occasions regarding the very deficiencies

that exist in his current briefing in this case.[3] The Court finds that Plaintiff has not demonstrated that the ALJ harmfully misevaluated "other medical evidence" and prior administrative findings as a matter of fact or law.

**2. Plaintiff's Testimony**

Plaintiff argues the ALJ harmfully erred by failing to provide "specific, clear and convincing" reasons for discounting her testimony about the severity of her symptoms and functional limitations. Dkt. 16, at 10–16; *see Molina*, 674 F.3d at 1112. The Court disagrees.

The ALJ discounted plaintiff's testimony about the severity of her physical and mental symptoms as inconsistent with the record: the stable and controlled nature of the severe conditions and largely unremarkable objective examination findings; and Plaintiff's wide range

---

[3] *See, e.g.*, *Frost v. Berryhill*, 727 F. App'x 291, 295 (9th Cir. 2018) (refusing to review plaintiff's "undeveloped" argument); *Williams v. Berryhill*, 728 F. App'x 709, 711 (9th Cir. 2018) (finding plaintiff's challenge to ALJ's evaluation of medical opinion was insufficient where she failed to explain why the ALJ's finding was erroneous); *Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018) (finding plaintiff failed to argue the issue on appeal as "specifically and distinctly" as required to invoke the Ninth Circuit's review); *St. Clair v. Saul*, 776 F. App'x 447 (9th Cir. 2019) (finding plaintiff failed to adequately develop argument where he failed to identify any specific errors in the ALJ's evaluation of the medical opinions); *see also Romo v. Colvin*, No. 14-CV-419-BJR-BAT, 2015 WL 64908, at *4 (W.D. Wash. Jan. 5, 2015) (finding plaintiff failed to address all of the ALJ's reasons regarding the consistency of a medical opinion); *Dinsmore v. Colvin*, No. C15-1129-MJP, 2016 WL 4523853, at *2 (W.D. Wash. Aug. 30, 2016), *aff'd sub nom. Dinsmore v. Berryhill*, 727 F. App'x 437 (9th Cir. 2018) (finding plaintiff failed to identify or explain how evidence undermined the ALJ's finding of inconsistency between two medical opinions); *Joseph L. S.C. v. Comm'r of Soc. Sec.*, No. C23-5246-SKV, 2024 WL 4471778, at *4 (May 22, 2024); *Kimberly D. v. Comm'r of Soc. Sec.*, No. C22-5588-BAT, 2023 WL 3001405, at *4 n.5 (W.D. Wash. Apr. 19, 2023) (finding plaintiff's lack of clarity and delineation in challenging five medical opinions "very clearly f[ell] short of appellate review requirements"); *Dawn D. v. Comm'r of Soc. Sec.*, No. C22-1001-DWC, 2023 WL 4487671, at *5 (W.D. Wash. July 12, 2023) (stating, "[p]laintiff's general assertion of error, absent further explanation, is insufficient for judicial review"); *Meagan B. v. Comm'r of Soc. Sec.*, No. 23-5794 MLP, 2024 WL 1617953, at *3 (W.D. Wash. Apr. 15, 2024) (explaining "bare assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present 'appellant's contentions and the reasons for them'").

of daily activity. Tr. 27–30. First, the ALJ cited numerous ways in which the medical record suggested Plaintiff was less limited both physically and mentally than alleged and that she fared better with conservative medical treatment, medication management, mental-health therapy, and physical therapy.[4] Tr. 27–30; *see* Tr. 1324, 1369–76, 1377–81, 1459–60,1472, 1647–48, 1722, 1733, 1740, 1770, 1852, 1858, 1907, 1928, 1940, 1943, 2024, 2026–27. Second, the ALJ accurately characterized Plaintiff's daily activities as more consistent with the assessed RFC of light work with additional limitations than with more debilitating functional restrictions. Tr. 27–28. Plaintiff returned to full-time, physically intensive work for a period at the end of 2022, *see* Tr. 1943, 1953, 1955, 1957; she was able to resume playing disk golf, *see* Tr. 1648; she prepared her own meals, grocery shopped by herself, did research on the internet, bathed and dressed herself, did light housework, and did laundry, *see* Tr. 58, 1379, 1455, 1560. Tr. 27–28. Even if a claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

[4] Plaintiff takes issue with the ALJ's reference to Plaintiff's methamphetamine use raising questions about her credibility because Adderall use can also lead to positive test results for methamphetamine. Dkt. 16, at 11 (citing Tr. 25, 27, 29, 31 (citing Tr. 1858)). This argument carries little weight for several reasons. First, that the positive test for methamphetamine stemmed from Plaintiff's use of Adderall is speculation not supported by the record or a medical provider. Second, Plaintiff admitted use of methamphetamine in 2022 and 2023 while at the same time informing examiners that she was not using methamphetamine. *See* Tr. 1321, 1369, 1378. Third, it would not be unreasonable for the ALJ to have presumed that a positive test in January 2025 for methamphetamine meant that Plaintiff may have been using methamphetamine despite attestations to the contrary at the May 2025 hearing. *Compare* Tr. 58 *with* Tr. 1858. Even at the 2025 appointment in which the positive methamphetamine test was noted, Plaintiff informed her medical provider that she had no history of illicit drug use. Tr. 1860.

Contrary to Plaintiff's conclusory argumentation,[5] the ALJ cited specific, clear and convincing evidence for discounting the severity of plaintiff's symptom testimony based on conflicting medical evidence and her daily activities. The Court finds Plaintiff has not demonstrated that the ALJ failed to support the decision to discount Plaintiff's testimony with substantial evidence or harmfully misapplied the law.

**3. Lay Testimony**

Plaintiff contends that the ALJ misevaluated lay testimony by Plaintiff's sister, SSI Facilitator Vivian Simon-Kind, and Plaintiff's father. Dkt. 16, at 16–18. The Court disagrees.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1513(a)(4) (defining "[e]vidence from nonmedical sources"); id. § 404.1529(c)(3) (requiring ALJs to "carefully consider" information from nonmedical sources concerning "the intensity and persistence of [a claimant's] symptoms," including statements about "any symptom-related functional limitations and restrictions"). An ALJ is required to give germane reasons for discrediting lay testimony "[a]nd the failure to provide such reasons can be harmless, but it is an error nonetheless." *Fain v. Bisignano*, __ F.4th __, 2026 WL 2795427, at *5 (Sept. 18, 2026) (citing *Molina*, 674 F.2d at 1114–15, 1122).

Despite erroneously presuming that lay testimony could be discounted without articulating a reason for doing so, the ALJ stated that the lay testimony had been evaluated for both consistency with Plaintiff's statements and consistency with the overall record. Tr. 31 (referring to Tr. 397–405 (Plaintiff's sister), 449–54 (SSI facilitator), 483-490 (Plaintiff's father),

---

[5] Plaintiff argues that the ALJ harmfully erred because Plaintiff's testimony should be believed and any contrary evidence should be disbelieved. Dkt. 16, at 10–16.

503-05 (Plaintiff's parents)). The ALJ discounted the lay testimony by Plaintiff's sister, the SSI facilitator, and the Plaintiff's father as inconsistent with the record for the same reasons as Plaintiff. *Id.* That is, the ALJ determined that the third-party statements were inconsistent with the stable and controlled nature of the severe conditions and largely unremarkable objective examination findings, as well as with Plaintiff's wide range of daily activity. Tr. 27–30.

The Court finds that the ALJ stated germane reasons for discounting the lay testimony as inconsistent with the record and Plaintiff's daily activities. Moreover, to the extent that the ALJ failed under *Fain* to articulate reasons for discounting the lay testimony, the Court finds the error to be harmless because the record of generally mild to moderate limitations and Plaintiff's daily activities could be reasonably construed as undermining the lay testimony about the severity of Plaintiff's physical and mental impairments.

The Court finds Plaintiff has failed to demonstrate that the ALJ failed to support the decision or harmfully misapplied the law with respect to discounting the lay testimony by Plaintiff's sister, the SSI facilitator, and Plaintiff's father.

**4. Plaintiff's RFC**

Plaintiff argues the ALJ erroneously assessed RFC by misevaluating the medical evidence, Plaintiff's testimony, and the lay testimony. The Court has found that the ALJ did not harmfully misevaluate the medical evidence, Plaintiff's testimony, and the lay testimony. The Court therefore rejects Plaintiff's argument the ALJ erroneously assessed RFC.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

DATED this 24th day of September 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge